Filed 4/16/14  P. v. Armenta CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GUSTAVO ARMENTA,<br><br>Defendant and Appellant. | F066597<br><br>(Super. Ct. No. F12904118)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Hilary A. Chittick, Judge.

Ross Thomas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Kane, Acting P.J., Poochigian, J., and Peña, J.

**INTRODUCTION**

On July 11, 2012, an information was filed against appellant, Gustavo Armenta, charging him with felony corporal injury to his wife, Tracy Armenta, with a prior conviction within seven years (Pen. Code, § 273.5, subd. (e)(1), count 1), assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4), count 2), assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1), count 3), cutting a telephone line (Pen. Code, § 591, count 4), dissuading a witness by force or threat (Pen. Code, § 136.1, subd. (c)(1), count 5), battery with serious bodily injury (Pen. Code, § 243, subd. (d), count 6), and false imprisonment by violence (Pen. Code, § 236, count 7).[1] The information alleged a great bodily injury enhancement (Pen. Code, § 12022.7, subd. (e)).

At the conclusion of a jury trial on October 26, 2012, Gustavo was found guilty of the lesser included offense on count 1 of battery on a spouse (Pen. Code, § 243, subd. (e)(1)) and guilty of count 2 as charged. The jury could not reach a verdict on the remaining counts, the trial court declared a mistrial, and the remaining counts were subsequently dismissed. On December 4, 2012, Gustavo was sentenced to the aggravated prison term of four years on count 2 and to a concurrent jail sentence of 304 days on count 1. Gustavo was awarded custody credits of 304 days.

Gustavo contends the trial court erred in not permitting him to impeach Tracy on a prior conviction for welfare fraud and an allegation that she was dealing drugs. The trial court, however, permitted Tracy's impeachment for a marijuana cultivation conviction in 2003, a conviction in 2010 for receiving stolen property, and her status of being on felony probation. We do not find error.

---

[1]     To avoid confusion, we refer to appellant and his wife by their first names.

## FACTS

### Impeachment of Victim

The trial court conducted a hearing to determine what evidence, if any, could be used to impeach the victim, Tracy Armenta. Tracy had convictions in 2003 for child endangerment (Pen. Code, § 273a) and felony cultivation of marijuana (Health & Saf. Code, § 11358). Tracy also had a conviction in 1996 for welfare fraud. The prosecutor argued that the welfare fraud conviction was too remote in time. The prosecutor argued the child endangerment and marijuana cultivation cases were both remote in time and the cultivation case did not involve moral turpitude.

Defense counsel did not seek to impeach Tracy for the marijuana cultivation charge, but did intend to impeach her with the other two offenses as well as a 2010 conviction for possession of stolen property. The court ruled that Tracy could not be impeached for child endangerment, finding it was not a crime of moral turpitude, or with the welfare fraud because it was remote in time.[2] The court did rule that Tracy could be impeached with her conviction for receiving stolen property in 2010 and for currently being on felony probation.

During the trial, defense counsel represented that one of the Armenta children told a teacher in 2010 that Tracy had been selling drugs and defense counsel made a motion to impeach Tracy with this information. The trial court denied defense counsel's motion, finding that the information was inadmissible under Evidence Code section 352[3] because the alleged criminal conduct was more prejudicial than probative and it involved a time two years prior to the circumstances surrounding the allegations against appellant.

---

[2] Although Tracy was not impeached with her prior child endangerment conviction, she testified that two of her daughters had been adopted.

[3] All further statutory references are to the Evidence Code.

3

During cross-examination, defense counsel impeached Tracy with her felony convictions in 2003 for cultivating marijuana and in 2010 for receiving stolen property. Defense counsel also established that Tracy was currently on probation.

*Offense*

Tracy began dating Gustavo in 2000 and had been married to Gustavo for 10 years. On the evening of May 29, 2012, Tracy was at home taking care of her five-month-old granddaughter. Tracy was holding her granddaughter and cooking dinner. Gustavo became very angry because he did not like Tracy to be around her children or grandchildren. Gustavo called the grandchild "it," and told Tracy to get the child out of there.

Gustavo was walking into the bedroom. Tracy went into the room to collect her purse and keys. While Tracy was still holding the child, Gustavo pushed her to the ground. Tracy got up and took her grandchild to her neighbors, Ruth and Carl Espinosa. Tracy suffered a twisted knee and the child sustained a scrape to the forehead.

Carl Espinosa testified that Tracy came over to their house with her grandchild and said that Gustavo was "at it again." Tracy handed the baby to his wife, Ruth. Espinosa told his wife to call the police. Espinosa saw Tracy go back to her house. Espinosa walked up to the front gate of the Armenta home because he heard a lot of loud bangs and glass breaking. Espinosa saw Tracy enter her residence and the door close behind her.

Espinosa heard yelling and tried to enter the Armenta home, but the door was locked. Espinosa saw Gustavo throw a telephone out the front door and close it again. Tracy went back to her house because her three children were still there and she did not "know how bad things would get." Tracy found the front door locked by the deadbolt. She did not have the key for that lock, only Gustavo had the deadbolt key. Tracy apparently entered through the back of the house and tried to go to the bedroom. Gustavo

4

was around the dining room. Tracy tried to use the land line that was wired into the wall in the kitchen, but could not find it.

Tracy tried to grab a cell phone on the dining room table so she could call the police. Before Tracy could grab the cell phone, Gustavo approached her and the two became engaged in a tug-of-war over the cell phone. Tracy could not use the cell phone because it became broken. Tracy tried to leave the house through the front door, but it was still locked. Gustavo was blocking Tracy's path to the back door.

Gustavo pulled down a hutch that he was standing next to. The hutch landed on the table. Glass from the hutch struck Tracy. The jury was shown a picture of the fallen hutch. The hutch broke the top part of a dining room chair. Tracy crawled underneath the dining room table to exit the house through the back door. The floor was covered in glass. It was difficult for Tracy to get up because her knee was "messed up." The police arrived as Tracy was exiting the house.

The Armentas' 10-year-old son H.A. testified that he had been at a friend's house. When he came home, H.A. heard yelling and banging. H.A. saw his father throw the telephone out of the house. The front door was locked, so H.A. entered the house through the back door. H.A. saw his father with the hutch on his mother, who was slouched over with the hutch leaning over her. Tracy told H.A. and his brother to go outside. There was blood all over the floor. H.A. heard more yelling and banging inside the house. H.A. described his mother as being "all bloody" with blood all over her clothes and hands. Tracy was transported by ambulance to the hospital. She had a cut on her pinkie finger and received butterfly stitches. Her knee was also X-rayed. Tracy was given medications and a leg brace for her knee. Tracy wore the leg brace for four or five days.

Tracy denied that she was pressured to "tell stories" about Gustavo. Tracy admitted on cross-examination that her probation officer placed pressure on her to testify

5

by telling her she would go to jail and Child Protective Services (CPS) would take her children. Tracy described Gustavo as a good father who never harmed the children.

*Appellant's Prior Attacks on Victim*

Appellant had felony convictions for inflicting corporal injury on a spouse in 2003, 2006, June 8, 2008, and June 14, 2008. In June 2003, Gustavo hit Tracy with a metal weight lifting bar and held her head under water in a children's swimming pool. The SWAT team was called to get Gustavo out of the house. In May 2006, Tracy kept trying to leave an argument with Gustavo, who kept dragging and pulling her into the house. On two other occasions in May 2006, Gustavo caused Tracy to fall on a wet floor and struck her on the back with a garden rake. On June 8, 2008, Gustavo fought with Tracy and caused her to fall. On June 14, 2008, Gustavo pushed, shoved, and grabbed Tracy causing her arms to bruise.

*Defense Case*

Gustavo testified that on the night of the incident, he told Tracy he was going to lie down because he was not feeling well. When Gustavo referred to the grandchild as an "it," Tracy began to "wig out." The door to the bedroom flew open and Tracy told Gustavo that he knew he loved the child. Gustavo told Tracy to take the child away because he was worried the child might get sick from him. According to Gustavo, Tracy began to strike and slap him with a closed hand. Gustavo told her to stop and Tracy exited the house through the front door.

Gustavo explained that Tracy came back into the house alone through the front door and told him she wanted to fight. Gustavo said that Tracy broke a mirror in the living room, pulled all of the drawers out of the bottom of the hutch, started hitting hutch with her elbow, and threw a glass from the table through a glass pane on the hutch. Tracy cut her hand as a result. Tracy then pulled the hutch down onto the table, breaking a chair. Gustavo explained that he remained seated on an ottoman.

6

Gustavo said Tracy then came at him with a cheap steak knife and pricked him with it. The knife barely broke Gustavo's skin. Tracy told Gustavo she was waiting for him to die, but she loved him. Although at one point Gustavo was trying to call 911 from his cell phone, Tracy fought with him over the phone and the screen went dead.

Dr. Paul Ky was Gustavo's pain management physician. Gustavo had industrial injuries to his wrist, elbow, and shoulders. Gustavo had surgery on his left shoulder. Gustavo also had a carpal tunnel release surgery of the medial nerve in his wrist. Dr. Ky described Gustavo as suffering muscular atrophy and his hand as being quite weakened. Dr. Ky believed it was highly improbable that Gustavo could have grabbed a heavy piece of furniture and pulled it down on someone. Dr. Ky acknowledged, however, that the combination of pain medications and adrenalin would make such a feat more possible. Dr. David Cardona, Gustavo's primary care physician, testified that at the time of the incident Gustavo had pneumonia. This causes shortness of breath and fatigue, making major exertion difficult.

*Rebuttal*

Jessica Boyer, Tracy's probation officer, testified that she did not tell Tracy that CPS would take her children if she did not testify against Gustavo. Because Boyer was a mandated reporter, she did have to file a report with her department concerning the incident. Boyer assisted Tracy with additional steps she could take to keep herself and her children safe. Boyer described Tracy as scared. Boyer did not discuss Tracy's testimony.

## LIMITATIONS ON IMPEACHMENT TESTIMONY

Gustavo contends the trial court improperly limited his impeachment of Tracy because it excluded her conviction for welfare fraud and the allegations that she engaged in drug sales. We disagree and affirm the trial court's judgment.

7

Section 352 gives the trial court broad discretion to determine if the probative value of evidence is substantially outweighed by the prejudicial effect of that evidence. In assessing the admissibility of evidence under section 352, trial courts determine if the proffered evidence will necessitate an undue consumption of time, or, create substantial danger of confusing the issues or misleading the jury. A trial court's discretionary ruling under section 352 is not disturbed on appeal except upon a showing that the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice. (*People v. Williams* (2008) 43 Cal.4th 584, 634-635.)

When parties seek to introduce uncharged offenses, trial courts should consider the remoteness of time of the uncharged offense as well as the time involved in introducing and refuting evidence of the uncharged act. (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1276; *People v. Daniels* (2009) 176 Cal.App.4th 304, 316.)

Tracy's conviction for welfare fraud occurred in 2003, more than nine years prior to the trial in this case. The trial court did not abuse its discretion in denying Gustavo's request to impeach Tracy with a conviction so remote in time. The allegation that Tracy sold drugs in 2010 was apparently an uncharged offense. We again find no error by the trial court in denying Gustavo's attempt to impeach Tracy with this uncharged offense. It could well have become a trial within a trial, taking a great deal of time to introduce and refute the allegation.

More importantly, Tracy was impeached with a conviction in 2010 for cultivation and the jury was aware of this conviction as well as the fact that Tracy was on felony probation at the time of the trial. Adding an uncharged or unproven act of drug dealing would have added little to the jury's consideration of Tracy's veracity and credibility as a witness.

Finally, we note that even if the trial court erred in failing to permit Tracy's further impeachment, any error was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836.

8

Reversal is appropriate only if it is reasonably probable the defendant would have received a more favorable result absent the alleged error. (*People v. Breverman* (1998) 19 Cal.4th 142, 165-179.) Tracy's account of events was corroborated in significant details by her son and her neighbor. The jury heard and weighed testimony from both Tracy and Gustavo and concluded that Gustavo had not only committed misdemeanor spousal battery but felony assault by means likely to cause great bodily injury. We do not find that further impeachment of Tracy would have led to a more favorable result.

## DISPOSITION

The judgment is affirmed.